# EXHIBIT 12

**ELECTRONIC PRIVACY INFORMATION CENTER, Plaintiff, v. DEPARTMENT OF JUSTICE, Defendant. AMERICAN CIVIL LIBERTIES UNION, et al., Plaintiffs, v. DEPARTMENT OF JUSTICE, Defendant.**

Civil Action 06-00096 (HHK), Civil Action 06-00214 (HHK)

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*2006 U.S. Dist. LEXIS 5773*

**February 16, 2006, Decided**

**COUNSEL:** [*1] For ELECTRONIC PRIVACY INFORMATION CENTER, Plaintiff: David L. Sobel, Marcia Clare Hofmann, ELECTRONIC PRIVACY INFORMATION CENTER, Washington, DC.

For DEPARTMENT OF JUSTICE, Defendant: Rupa Bhattacharyya, U.S. DEPARTMENT OF JUSTICE CIVIL DIVISION, Washington, DC.

**JUDGES:** Henry H. Kennedy, Jr., United States District Judge.

**OPINIONBY:** Henry H. Kennedy, Jr.

**OPINION:**

### MEMORANDUM OPINION AND ORDER

Plaintiff, Electronic Privacy Information Center ("EPIC"), brings this action against the Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), *5 U.S.C. ß 552*, seeking the expedited processing and release of agency records regarding the Bush Administration's policy of conducting surveillance of domestic communications without the prior authorization of the Foreign Intelligence Surveillance Court. Presently before the court is EPIC's motion for a preliminary injunction [# 3]. Upon consideration of the motion, the opposition thereto, the record of the case, and the argument of counsel at a hearing, the court concludes that the motion must be granted. n1

N1 After EPIC filed its motion for a preliminary injunction, the court consolidated this case with *American Civil Liberties Union, et al. v. Department of Justice*, Civil Action No. 06-214. By that case, plaintiffs seek "the release of records related to the NSA's secret surveillance program to intercept, without prior judicial authorization, the telephone and Internet communications of people inside the United States." Compl. P2.

This memorandum opinion is concerned solely with EPIC's motion for a preliminary injunction.

[*2]

### I. FACTUAL BACKGROUND

On December 16, 2005, the *New York Times* first reported that President Bush "secretly authorized the National Security Agency to eavesdrop on Americans and others inside the United States to search for evidence of terrorist activity without the court-approved warrants ordinarily required for domestic spying." James Risen & Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, N.Y. TIMES, Dec. 16, 2005. The *New York Times* also reported that the purported legal justification for the warrantless surveillance program had been developed by DOJ attorneys and officials, that DOJ "audited the N.S.A. program," and that DOJ "expanded and refined a checklist to follow in deciding whether probable cause existed to start monitoring someone's communications." *Id*.

In response to this news, EPIC submitted four FOIA requests that same day to four DOJ components--the Office of the Attorney General ("OAG"), the Office of Intelligence Policy and Review ("OIPR"), the Office of Legal Counsel ("OLC"), and the Office of Legal Policy ("OLP")--citing the *New York Times* article and requesting records "from September 11, 2001 to the present concerning [*3] a presidential order or directive authorizing the National Security Agency ('NSA'), or any other component of the intelligence community, to conduct domestic surveillance without the prior authorization of the Foreign Intelligence Surveillance Court ('FISC')." Pl.'s Mot., Exhs. 7, 8, 9 & 10. EPIC specifically sought the following items:

Case 1:06-cv-00029-CKK   Document 7-12   Filed 03/07/06   Page 3 of 9

Page 2
2006 U.S. Dist. LEXIS 5773, *

(1) an audit of NSA domestic surveillance activities;

(2) guidance or a "checklist" to help decide whether probable cause exists to monitor an individual's communications;

(3) communications concerning the use of information obtained through NSA domestic surveillance as the basis for DOJ surveillance applications to the FISC; and

(4) legal memoranda, opinions or statements concerning increased domestic surveillance, including one authored by John C. Yoo shortly after September 11, 2001 discussing the potential for warrantless use of enhanced electronic surveillance techniques.

*Id*.

In its letters, EPIC requested expedited processing of its FOIA requests because, according to EPIC, they (1) involve a "matter of widespread and exceptional media interest in which there exist possible questions about the government's [*4] integrity which affect public confidence," *id*. (quoting 28 C.F.R. ß 16.5(d)(1)(iv)) and (2) pertain to a matter about which there is an "urgency to inform the public about an actual or alleged Federal Government activity," and were made by "a person primarily engaged in disseminating information." *Id*. (quoting *5 U.S.C. ß 552(a)(6)(E)(v)(II)*). In support of its requests for expedited processing, EPIC noted that the NSA surveillance program "raises serious legal questions about the government's intelligence activity and has received considerable media attention," and that "hundreds of local and national media organizations reported on this matter throughout the United States this morning." *Id*. at 4. Noting the pendency of congressional hearings on the NSA's warrantless domestic surveillance, EPIC also stated that "it is critical for Congress and the public to have as much information as possible about the DOJ's role in this surveillance to fully consider and determine its propriety." *Id*.

By letter dated December 21, 2005, the DOJ's Office of Information and Policy ("OIP") responded to EPIC's letters "on behalf of the Offices [*5] of the Attorney General and Legal Policy." Pl.'s Mot., Exh. 12, at 1. OIP wrote that "your request for expedited processing ...should be granted." *Id*. Notwithstanding this determination, OIP stated that "we will be unable to comply with the twenty-working-day time limit in this case." *Id*. OIP did not inform EPIC of an anticipated date for the completion of the processing of EPIC's FOIA requests.

Almost three weeks later, on January 6, 2006, OIPR responded to EPIC's FOIA request and stated that "the Office of Public Affairs granted your request for expedited treatment." Pl.'s Mot., Exh. 13, at 1. OIPR further stated that "your request will be reviewed ahead of others routinely processed on a first-in, first-out basis" but did not inform EPIC of an anticipated date for the completion of the processing. *Id*. On January 25, 2006, OLC similarly advised EPIC that its request for expedited processing had been granted. Thus, all four DOJ components to which EPIC sent its requests have conceded that expedited processing is appropriate.

To date, DOJ has neither completed the processing of EPIC's FOIA requests nor informed EPIC of an anticipated date for the completion of the processing [*6] of the requests. n2 On January 19, 2006, EPIC moved for a preliminary injunction to enjoin DOJ's "unlawful attempts to impede plaintiff's efforts to obtain agency records." Pl.'s Mot. at 1. EPIC seeks an order requiring DOJ to complete the processing of its FOIA requests within twenty days and to provide a *Vaughn* index n3 within thirty days.

n2 At the preliminary injunction hearing, held on February 10, 2006, counsel for DOJ stated that she believed that disclosures would begin on March 3, 2006, and continue on a rolling basis. She was unable to predict when the production would be completed, however.

n3 A *Vaughn* index describes what information the agency withheld from the FOIA requester as well as the statutory exemption claimed for each withholding. *See Vaughn v. Rosen, 157 U.S. App. D.C. 340, 484 F.2d 820 (D.C. Cir. 1973)*.

**II. ANALYSIS**

**A. Propriety of Considering Preliminary Injunctive Relief**

As a threshold matter, DOJ questions the propriety of EPIC seeking [*7] preliminary injunctive relief in this case, arguing that "such extraordinary and draconian emergency relief" is "unprecedented." Def.'s Opp'n at 1. Further, DOJ accuses EPIC of using the motion for a preliminary injunction, which according to the DOJ seeks "a version of the ultimate relief" in the case, as a litigation tactic "to artificially accelerate the proceedings in this case." *Id*. at 2-3.

DOJ's argument that EPIC acts improperly in seeking a preliminary injunction is unavailing. On numerous occasions, federal courts have entertained motions for a preliminary injunction in FOIA cases and, when appropriate, have granted such motions. *See ACLU v. Dep't of Defense, 339 F. Supp. 2d 501, 503 (S.D.N.Y. 2004)* (granting preliminary injunction motion in FOIA case and requiring production within one month); *Aguilera v. FBI, 941 F. Supp. 144, 152-53 (D.D.C. 1996)* (granting preliminary injunction in FOIA case and requiring expedited processing to be completed within approximately one month); *Cleaver v. Kelley, 427 F. Supp. 80, 81-82 (D.D.C. 1976)* (granting preliminary injunction in FOIA case and requiring expedited processing to be [*8] completed within approximately twenty days); *see also Al-Fayed v. CIA, 2000 U.S. Dist. LEXIS 21476, at *19-20 (D.D.C. Sept. 20, 2000)* (denying preliminary injunction in FOIA case after conducting four-part analysis); *Assassination Archives & Research Ctr. v. CIA, 1988 U.S. Dist. LEXIS 18606, at *1-3 (D.D.C. Sept. 29, 1988)* (same). n4

N4 All of the District of Columbia cases cited above involved challenges to an agency's decision to *deny* expedited processing, while EPIC's case seeks to speed up processing of requests that the government concedes are worthy of expedition. This distinction does not negate the propriety of this court's consideration of the merits of EPIC's motion, for the cited cases stand for the proposition that the court may use its equitable power to prevent agency delay, even when exercise of such authority is preliminary in nature.

Moreover, the D.C. Circuit has held that "the FOIA imposes no limits on courts' equitable powers in enforcing its terms" [*9] and "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [such] abuses." *Payne Enters. v. United States, 267 U.S. App. D.C. 63, 837 F.2d 486, 494 (D.C. Cir. 1988)* (quotation omitted). Therefore, the court does not hesitate to consider the merits of EPIC's motion.

**B. Standard for Preliminary Injunctive Relief**

This court may issue a preliminary injunction only when the movant demonstrates: (1) a substantial likelihood of success on the merits; (2) that it would suffer irreparable injury if the injunction is not granted; (3) that an injunction would not substantially injure other interested parties; and (4) that the public interest would be furthered by the injunction. *Mova Pharm. Corp. v. Shalala, 329 U.S. App. D.C. 341, 140 F.3d 1060, 1066 (D.C. Cir. 1998)* (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision, 313 U.S. App. D.C. 178, 58 F.3d 738, 746 (D.C. Cir. 1995))*; *see also Bancoult v. McNamara, 227 F. Supp. 2d 144, 150 (D.D.C. 2002)*. "These factors interrelate on a sliding scale and must be balanced against each other." *Serono Lab., Inc. v. Shalala, 332 U.S. App. D.C. 407, 158 F.3d 1313, 1318 (D.C. Cir. 1998)*. [*10]

Because preliminary injunctions are extraordinary forms of judicial relief, district courts should grant them sparingly. *Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997)*. Although the court has the discretion to issue or deny a preliminary injunction, *Ambach v. Bell, 222 U.S. App. D.C. 348, 686 F.2d 974, 979 (D.C. Cir. 1982)*, it is not a form of relief granted lightly.

*1. Likelihood of Success on the Merits*

FOIA requires agencies to "make available to the public information." *5 U.S.C. § 552(a)*. The purpose of providing information to the public is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242, 98 S. Ct. 2311, 57 L. Ed. 2d 159 (1978)*. To achieve this goal, FOIA requires that an agency determine, within twenty working days, whether or not to comply with a FOIA request. *5 U.S.C. § 552(a)(6)(A)(I)*. An agency's failure to comply with these time limits may be treated as "constructive exhaustion" of administrative remedies, authorizing [*11] the requester to seek judicial review immediately. *Id. § 552(a)(6)(C)(i)*. After suit is filed, an agency may obtain a stay of proceedings from the court in order to gain more time to complete its processing. Such stays, however, may only be granted if the agency can show that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." *Id. § 552(a)(6)(C)(i)-(iii)*; *Open America v. Watergate Special Prosecution Force, 178 U.S. App. D.C. 308, 547 F.2d 605, 610-16 (D.C. Cir. 1976)*.

In 1996, Congress passed the Electronic Freedom of Information Act Amendments, which, *inter alia*, added to FOIA a requirement that agencies provide for expedited processing of requests in certain cases. *5 U.S.C. § 552(a)(6)(E)*. n5 When expedition is appropriate, an agency is obligated to process the request "as soon as practicable." *Id. § 552(a)(6)(E)(iii)*; 28 C.F.R. § 16.5(d)(4). Here, there is no dispute that EPIC's FOIA requests are entitled to expedited processing; all four of the DOJ components who received EPIC's requests have so conceded. Rather, the primary dispute between [*12] the parties in this matter is the meaning of the statutory language "as soon as practicable."

Case 1:06-cv-00029-CKK   Document 7-12   Filed 03/07/06   Page 5 of 9

Page 4
2006 U.S. Dist. LEXIS 5773, *

n5 The expedited processing provision of FOIA states, in relevant part, that:

> (E)(i) Each agency shall promulgate regulations ...providing for expedited processing of requests for records--
>
>> (I) in cases in which the person requesting the records demonstrates a compelling need; and
>>
>> (II) in other cases determined by the agency.
>
> * * *
>
> (v) For purposes of this subparagraph, the term "compelling need" means--
>
>> (I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or
>>
>> (II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

*5 U.S.C. ß 552(a)(6)(E)*.

As required by the amended FOIA, the DOJ implemented regulations providing for the expedited processing of requests in cases where there is a compelling need, as defined above, as well as in cases involving "the loss of substantial due process rights" or "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. ß 16.5(d)(1)(i)-(iv).

[*13]

While "as soon as practicable" remains undefined in FOIA, such language must be construed in light of the entire statutory scheme enacted by Congress. *See Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 809, 109 S. Ct. 1500, 103 L. Ed. 2d 891 (1989)* ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); *Time Warner Entm't Co. v. FCC, 345 U.S. App. D.C. 186, 240 F.3d 1126, 1135 (D.C. Cir. 2001)* ("We must place the statutory language in context and 'interpret the statute as a symmetrical and coherent regulatory scheme.'") (quoting *FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133, 120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000))*. Moreover, statutes must be interpreted, if possible, to avoid absurd results. *Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575, 102 S. Ct. 3245, 73 L. Ed. 2d 973 (1982)* ("Interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."); *FTC v. Ken Roberts Co., 349 U.S. App. D.C. 240, 276 F.3d 583, 590 (2001)*. [*14]

DOJ argues that the "as soon as practicable" language in the expedited processing provisions should be interpreted to impose no concrete deadline. Rather, according to DOJ, the court should interpret expedition under FOIA to require merely that an agency move a request "to the head of the line." Def.'s Opp'n at 11. Moreover, DOJ insists that courts should defer to an agency's determination that it is giving priority to a request and processing it "as soon as practicable."

Under DOJ's view of the expedited processing provisions of FOIA, the government would have carte blanche to determine the time line for processing expedited requests, with the courts playing no role whatsoever in the process. When pressed at the preliminary injunction hearing as to what delay would be excessive enough such that a court could properly invoke its authority to compel production, counsel for DOJ was unable or unwilling to give an answer. Rather, DOJ's

counsel suggested that the court and the requestor simply must take at face value an agency's determination that more time is necessary, regardless of the time that has elapsed since the request was filed. DOJ's position is easily rejected.

As EPIC suggests, [*15] DOJ's reading of the statute would give the agency unchecked power to drag its feet and "pay lip service" to a requester's "statutory and regulatory entitlement to expedition." Pl.'s Mot. at 12. Further, such a reading runs counter to the language of the statute and relevant case law. FOIA, as amended, envisions the courts playing an important role in guaranteeing that agencies comply with its terms. First, FOIA explicitly states that "failure by an agency to respond in a timely manner to [an expedited] request shall be subject to judicial review." *5 U.S.C. ß 552(a)(6)(E)(iii). See also 5 U.S.C. ß 552(a)(4)(B)* ("The district court ... has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld"). Adopting the government's position--that an agency has unfettered discretion to determine how long is practicable for processing expedited requests--would require the court to abdicate its "duty" to prevent "unreasonable delays in disclosing non-exempt documents." *Payne Enters., 837 F.2d at 494* (quotation omitted).

Furthermore, relevant case law [*16] establishes that courts have the authority to impose concrete deadlines on agencies that delay the processing of requests meriting expedition. These cases implicitly reject the notion that the decision of practicability is to be determined solely by the agency and support the contention that courts have the authority, and perhaps the obligation, to scrutinize closely agency delay. *See, e. g., Leadership Conference on Civil Rights v. Gonzales, 404 F. Supp. 2d 246, 2005 U.S. Dist. LEXIS 33158, at *32-33 (D.D.C. 2005)* (requiring DOJ to expedite the plaintiff's FOIA request and produce the requested documents within ten months); *Elec. Privacy Info. Ctr. v. Dep't of Justice*, Civ. No. 05-845, slip op. at *4-5 (D.D.C. Nov. 13, 2005) (noting that the agency's processing of the plaintiff's expedited request was "unnecessarily slow and inefficient" and ordering the agency to process 1500 pages every 15 calendar days until processing is complete); *Aguilera, 941 F. Supp. at 153* (requiring processing to be completed within approximately one month); *Cleaver, 427 F. Supp. at 81-82* (requiring processing to be concluded in less than one [*17] month).

In one case, the court specifically rejected the agency's argument that it was already expediting the plaintiff's request and ordered certain initial production within eleven days of the preliminary injunction hearing. *ACLU, 339 F. Supp. 2d at 503*. In that case, the defendant agency presented a similar argument to the one presented in this case; namely, that because the "defendant agencies were responding 'as soon as practicable,' the issue before [the court] was moot and ...the court lacked jurisdictional capacity to intervene." *Id*. The court rejected this argument, holding that it had the authority to intervene and finding that "the government had failed to respond properly to plaintiffs' request." *Id*. n6

> n6 In *ACLU*, the Department of Defense was ordered to produce certain documents within eleven days of the preliminary injunction hearing. *339 F. Supp. 2d at 503*. The parties were also ordered to confer and propose a schedule for the production of the balance of the requested documents one week later. *Id*. When the parties failed to agree, the court ordered the production of all remaining documents within one month. *Id. at 505*.

[*18]

Having rejected DOJ's argument that FOIA grants an agency unfettered discretion to determine when to process expedited requests, the court must next determine at what point processing becomes unreasonably delayed such that judicial intervention is appropriate. EPIC asserts that the twenty-day deadline that applies to standard FOIA requests should, at a minimum, also apply to requests meriting expedited processing. As EPIC argues, Congress could not have intended to create the absurd situation wherein standard FOIA requests must be processed within twenty days (unless the agency can show that exceptional circumstances exist for a delay), yet expedited requests empower an agency to unilaterally decide to exceed the standard twenty-day period. Here, DOJ has neither met the twenty-day deadline, nor has it suggested that exceptional circumstances exist to extend that deadline. Therefore, EPIC argues that, *a fortiori*, the DOJ must have exceeded the deadline for expedited requests.

The Electronic Freedom of Information Act Amendments of 1996, which enacted the expedited processing provision, "underlined Congress's recognition of the value in hastening release of certain information. [*19] " *Edmonds v. FBI, 417 F.3d 1319, 1324 (D.C. Cir. 2005)*. The legislative history of the amendments makes clear that, although Congress opted not to impose a specific deadline on agencies processing expedited requests, its intent was to "give the request priority for processing *more quickly than otherwise would occur*." S. Rep. No. 104-272, at 17 (1996) (emphasis added). Interpreting FOIA to allow the agency *more* time than that provided in situations involving standard FOIA requests neither hastens the release of information nor does it allow for

Case 1:06-cv-00029-CKK    Document 7-12    Filed 03/07/06    Page 7 of 9

Page 6
2006 U.S. Dist. LEXIS 5773, *

processing "more quickly than otherwise would occur." For these reasons, this court is of the view that the phrase "as soon as practicable," in the context of a provision of FOIA allowing for *expedited* processing, cannot be interpreted to impose a lower burden on the agency than would otherwise exist. n7 Doing so would not be "consistent with the legislative purpose" of FOIA and would "produce absurd results." *Griffin, 458 U.S. at 575*. Therefore, the court concludes that an agency that violates the twenty-day deadline applicable to standard FOIA requests presumptively also fails to process an expedited [*20] request "as soon as practicable." That is, a *prima facie* showing of agency delay exists when an agency fails to process an expedited FOIA request within the time limit applicable to standard FOIA requests.

> n7 It is important to remember that the "as soon as practicable" language is found in a provision providing for "expedited processing." The plain meaning of the word "expedite" is "to speed up the progress of." AMERICAN HERITAGE DICTIONARY 461 (New College ed. 1976). Any reading of the statutory language that allows the agency more time than allowed in standard requests would therefore run counter to the clear meaning of the words used in the expedited processing provision.

The presumption of agency delay raised by failing to respond to an expedited request within twenty days is certainly rebuttable if the agency presents credible evidence that disclosure within such time period is truly not practicable. n8 Here, however, DOJ has not attempted to present any evidence either that processing EPIC's FOIA [*21] requests within twenty days of the receipt of EPIC's requests was impracticable or that processing the complaint within the time period requested by EPIC in its motion (twenty days from the date this memorandum opinion is filed and three months from the date DOJ received EPIC's FOIA requests) is not practicable. Instead, the DOJ is content to rest on its unsupported allegations that delay is necessary because EPIC's requests are "broad" and involve classified documents. Pl.'s Opp'n at 14. These vague assertions, unsupported by credible evidence, are insufficient to demonstrate that further delay is currently necessitated. *Wilderness Soc'y v. Dep't of Interior, 2005 U.S. Dist. LEXIS 20042, at *34-35 (D.D.C. Sept. 12, 2005)* (listing cases that hold that an agency must present "analysis, statistics, agency affidavits, declarations, or other sworn statements" to meet its burden of establishing that further time for processing a FOIA request is required). Moreover, courts often find that one to two months is sufficient time for an agency to process broad FOIA requests that may involving classified or exempt material. *See, e. g., ACLU, 339 F. Supp. 2d at 504-05* [*22] (despite the fact that national security issues were raised by the FOIA request at issue, ordering production of all responsive documents within one month); *Judicial Watch, Inc. v. Dept' of Energy, 191 F. Supp. 2d 138, 140-41 (D.D.C. 2002)* (ordering agencies to process over 6000 pages of material within 60 days); *NRDC v. Dep't of Energy, 191 F. Supp. 2d 41, 43 (D.D.C. 2002)* (ordering the "vast majority" of the processing of 7500 pages to be completed within 32 days).

> n8 DOJ argues that, because EPIC bears the burden proving that it is entitled to a preliminary injunction, it must also bear the burden of proving that the agency is not acting "as soon as practicable." The court is comfortable rejecting this argument and placing such a burden on the agency once the twenty-day deadline has passed for two reasons. First, doing so is fair given that DOJ has sole access to and control over evidence pertaining to when processing can practicably be completed. *See Keyes v. School Dist. No. 1, 413 U.S. 189, 209, 93 S. Ct. 2686, 37 L. Ed. 2d 548 (1973)* ("There are no hard and fast standards governing the allocation of the burden of proof in every situation. The issue, rather, is merely a question of policy and fairness based on experience in the different situations.") (quoting 9 J. WIGMORE, EVIDENCE ß 2486, at 275 (3d ed. 1940)). As the Supreme Court has explained, it is "entirely sensible to burden the party more likely to have information relevant to the facts about [the matter at issue] with the obligation to demonstrate [those] facts... Such was the rule at common law." *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust, 508 U.S. 602, 626, 113 S. Ct. 2264, 124 L. Ed. 2d 539 (1993)*; *see also* MCCORMICK ON EVIDENCE ß 337, at 510 (5th ed. 1999) ("A doctrine often repeated by the courts is that where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue.").
>
> Second, interpreting the expedited processing provision to place the burden on the agency to account for delay would create a "symmetrical and coherent regulatory scheme." *Brown & Williamson, 529 U.S. at 133*. An agency sued for not responding to a standard FOIA request can receive additional time to process that request only if it meets its burden of establishing that the agency is exercising due diligence in exceptional circumstances. *5 U.S.C. ß 552(a)(6)(C)(i)-(iii)*. Because Congress imposed a burden on agencies to account for any delay in the processing of

Case 1:06-cv-00029-CKK   Document 7-12   Filed 03/07/06   Page 8 of 9

Page 7
2006 U.S. Dist. LEXIS 5773, *

standard FOIA requests, it stands to reason that an agency may also be held to account for delays in expedited processing.

[*23]

For these reasons, the court concludes that EPIC has made a clear showing that it is likely to succeed on the merits. It is undisputed that EPIC's FOIA requests merit expedition; all four of the relevant DOJ components have granted expedited processing to EPIC. Furthermore, DOJ has exceeded the twenty-day period applicable to standard FOIA requests. Finally, DOJ has not presented evidence that processing EPIC's FOIA requests within the next twenty days would be impracticable.

*2. Irreparable Injury*

As the Supreme Court has made clear, public awareness of the government's actions is "a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 172, 124 S. Ct. 1570, 158 L. Ed. 2d 319 (2004)*. Not only is public awareness a necessity, but so too is *timely* public awareness. For this reason, Congress recognized that delay in complying with FOIA requests is "tantamount to denial." H.R. Rep. No. 93-876, at 6 (1974). The D.C. Circuit likewise acknowledged that "stale information is of little value." *Payne Enters., 837 F.2d at 494*. The 1996 amendments to FOIA creating the statutory right to expedition in certain cases "underlined [*24] Congress' recognition of the value in hastening release of certain information." *Edmonds, 417 F.3d at 1324*. As EPIC correctly notes, "the loss of that 'value' constitutes a cognizable harm." Pl.'s Reply at 7. As time is necessarily of the essence in cases like this, such harm will likely be irreparable.

DOJ insists that EPIC will suffer no harm if the court were to deny EPIC's motion for a preliminary injunction because DOJ has already afforded EPIC all the relief to which it is entitled. Because it has already expedited EPIC's FOIA requests by administratively granting them expedited status and prioritizing them over other pending requests, DOJ argues that EPIC is entitled to "nothing more." Def.'s Opp'n at 16. This argument stretches the limits of plausibility. EPIC's right to expedition is certainly not satisfied by DOJ's *decision* to give priority to EPIC's requests. What matters to EPIC is not how the requests are labeled by the agency, but rather when the documents are actually released. As EPIC contends, "merely paying lip service" to EPIC's statutory right does not negate "the harm that results from the agency's failure to *actually* expedite its processing. [*25] " Pl.'s Reply at 7 (emphasis in original). Unless the requests are processed without delay, EPIC's right to expedition will be lost.

Morever, DOJ's arguments challenging the irreparable nature of the harm sustained by EPIC as a result of DOJ's delay is severely undermined by its determination that EPIC's FOIA requests merit expedition. Such a determination necessarily required DOJ to find that there was an "*urgency* to inform the public" about the warrantless surveillance program. Pl.'s Mot., Exhs. 12, 13 (emphasis added). Given this concession, the court finds it hard to accept DOJ's current argument that disclosure is not urgent and that further delay will not harm EPIC.

Beyond losing its right to expedited processing, EPIC will also be precluded, absent a preliminary injunction, from obtaining in a timely fashion information vital to the current and ongoing debate surrounding the legality of the Administration's warrantless surveillance program. President Bush has invited meaningful debate about the warrantless surveillance program. David E. Sanger, *In Shift, Bush Says He Welcomes Inquiry on Secret Wiretaps*, N.Y. TIMES, Jan. 12, 2006. That can only occur if DOJ processes [*26] its FOIA requests in a timely fashion and releases the information sought. n9

   n9 DOJ argues that "based upon the information that the government has already made public ...plaintiff is fully able to participate in the current public debate." Def.'s Opp'n at 18. This argument is quickly rejected, for as EPIC correctly argues, "a meaningful and truly democratic debate on the legality and propriety of the warrantless surveillance program cannot be based solely upon information that the Administration voluntarily chooses to disseminate." Pl.'s Reply at 8 (quotation omitted).

*3. Burden on Others' Interests*

EPIC argues that DOJ cannot be said to "be burdened by a requirement that it comply with the law." Pl.'s Mot. at 15. In its papers, DOJ never contests this point. Indeed, DOJ fails to make any case whatsoever that it will be burdened by granting a preliminary injunction in this matter, thereby conceding that this factor of the preliminary injunction inquiry weighs in EPIC's favor.

Additionally, it is notable [*27] that the DOJ components at issue in this case carry relatively small FOIA caseloads and handle very few, if any, expedited requests. The DOJ statistics for 2004 indicate that OIPR, OLP and OLC handled no requests that merited expedited processing, and OAG handled only two. Pl.'s Mot., Exh. 18. Therefore, requiring expedited processing of the requests at issue should not be unduly burdensome to DOJ and should not cause any delay to other expedited FOIA requests.

*4. Public Interest*

The public interest prong is met because "there is an overriding public interest ...in the general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port Auth. v. Adams., 181 U.S. App. D.C. 175, 556 F.2d 52, 59 (D.C. Cir. 1977)*. Moreover, the public interest is also served by the expedited release of the requested documents because it furthers FOIA's core purpose of "shedding light on an agency's performance of its statutory duties." *Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773, 109 S. Ct. 1468, 103 L. Ed. 2d 774 (1989)*; *see also Ctr. to Prevent Handgun Violence v. Dep't of Treasury, 49 F. Supp. 2d 3, 5 (D.D.C. 1999)* [*28] ("There is public benefit in the release of information that adds to citizens' knowledge"). Finally, given the great public and media attention that the government's warrantless surveillance program has garnered and the recent hearings before the Senate Judiciary committee, the public interest is particularly well-served by the timely release of the requested documents.

DOJ counters that a preliminary injunction will actually harm the public interest. Specifically, DOJ suggests that requiring the agency to finish its processing within twenty days will increase the chances that the agency will inadvertently disclose exempted documents. As Congress has determined that it is in the public interest to prevent the public disclosure of such documents, the public interest would be harmed "by compelling disclosure before appropriate agency review intended to protect material that is subject to statutory exemptions from disclosure can be completed." Def.'s Opp'n at 22.

To be sure, the court does not wish for DOJ to inadvertently release exempted materials. For that matter, "it is the duty of the court to uphold FOIA by striking a proper balance between [EPIC's] right to receive information [*29] on government activity in a timely manner and the government's contention that national security concerns prevent timely disclosure or identification." *ACLU, 339 F. Supp. 2d at 504*. However, "merely raising national security concerns cannot justify unlimited delay." *Id*. Congress has already weighed the value of prompt disclosure against the risk of mistake by an agency and determined that twenty days is a reasonable time period, absent exceptional circumstances, for an agency to properly process *standard* FOIA requests. Here, DOJ has not yet made any specific showing that it will not be able to process the documents within the time period sought by EPIC. Vague suggestions that inadvertent release of exempted documents *might* occur are insufficient to outweigh the very tangible benefits that FOIA seeks to further--government openness and accountability.

* * *

In sum, the record as currently before the court demonstrates that EPIC's motion for a preliminary injunction should be granted. EPIC has shown that, because DOJ has neither satisfied the time restraints applicable to standard FOIA requests nor established that such compliance was not practicable, EPIC [*30] is likely to succeed on the merits. Second, EPIC's right to timely release of the requested documents will be irreparably harmed if the documents are not processed promptly. Finally, both of the remaining factors of the preliminary injunction standard--that it further the public interest and that it not burden others' interests--counsel in favor of granting EPIC's motion.

### III. CONCLUSION

Accordingly, it is this 16th day of February, 2006, hereby

**ORDERED** that EPIC's motion for a preliminary injunction [# 3] is **GRANTED**; and it is further

**ORDERED** that DOJ shall complete the processing of EPIC's December 16, 2005 FOIA requests and produce or identify all responsive records within 20 days of the date of this order; and it is further

**ORDERED** that DOJ shall provide EPIC with a document index and declaration, as specified in *Vaughn v. Rosen, 157 U.S. App. D.C. 340, 484 F.2d 820 (D.C. Cir. 1973)*, stating its justification for the withholding of any documents responsive to EPIC's requests within 30 days of the date of this order.

Henry H. Kennedy, Jr.

United States District Judge