IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) ) | Civil Action No. 1:06-cv-0029 (CKK) |
| Plaintiff | ) ) | |
| v. | ) ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) ) | |
| Defendant. | ) ) | |

**OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL EXPEDITED PROCESSING
OF PLAINTIFF'S FREEDOM OF INFORMATION ACT REQUEST**

**INTRODUCTION**

This motion centers on the Freedom of Information Act request submitted to the Federal

Bureau of Investigation ("FBI") by plaintiff Electronic Privacy Information Center ("EPIC") for

"documents related to matters of possible intelligence misconduct reported or considered for

reporting to the Intelligence Oversight Board ("IOB")." Pl. Exhibit 3. Although the FBI is

processing this request on an expedited basis, has provided plaintiff with 442 pages of responsive

documents and has stated that it will complete the processing of the approximate 5500 pages of

responsive materials within 120 days,[1] plaintiff claims that this is not sufficient. Plaintiff seeks

an order requiring the FBI "to complete processing of plaintiff's request within twenty (20) days"

and "to produce a *Vaughn* index within thirty (30) days." Plaintiff's Motion to Compel Expedited

Processing of Its Freedom of Information Act Request ("Pl. Motion") at 1.

There is no legal or factual basis for such an order. The expedited processing provision

---

[1] Declaration of David M. Hardy, ¶¶ 27-28 (Def. Exhibit A).

of FOIA imposes no time limits on such processing. Instead, it simply provides that expedited

FOIA requests are to be accorded priority over other requests and processed by the agency "as

soon as practicable." 5 U.S.C. § 552(a)(6)(e)(iii). The FBI is doing just that. This is not a case

in which an agency has failed to show any progress or has not provided a timetable for the

completion of its processing. Instead, as explained below, the FBI has made significant progress

and expects to complete its processing within 120 days. In view of the volume of responsive

documents, the classification and exemption issues raised, FBI's available personnel, and the

progress already made by the FBI, there is simply no factual basis for plaintiff's claim that FBI is

not processing its request "as soon as practicable."

Plaintiff's request that defendant produce a *Vaughn* index within 30 days also should be

denied. As explained below, this demand for a *Vaughn* index is premature at this stage and

imposes unreasonable deadline in view of the volume of pages involved and the exemptions

involved. Furthermore, to the extent that plaintiff seeks to expedite the production of a *Vaughn*

index, this Court should allow the FBI to produce a sample *Vaughn* index.

## BACKGROUND

I.    **Statutory and Regulatory Background of FOIA's Expedited Processing Provision**

Agencies ordinarily process FOIA requests for agency records on a first-in, first-out basis.

In 1996, Congress amended the FOIA to provide for "expedited processing" of certain categories

of requests. See Electronic Freedom of Information Amendments of 1996 ("EFOIA"), Pub. L.

No. 104-231, § 8 (codified at 5 U.S.C. § 552(a)(6)(E)). Expedition, when granted, entitles

requestors to move immediately to the front of an agency processing queue, ahead of requests

filed previously by other persons.

As part of EFOIA, Congress directed agencies to promulgate regulations providing for expedited processing of requests for records (i) "in cases in which the person requesting the records demonstrates a compelling need"; 5 U.S.C. § 552(a)(6)(E)(i)(I); and (ii) "in other cases determined by the agency." Id. § 552(a)(6)(E)(i)(II). FOIA defines "compelling need" to mean:

> (I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or
>
> (II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

5 U.S.C. § 552(a)(6)(E)(v).[2]  The requestor bears the burden of showing that expedition is appropriate.  See Al-Fayed v. Central Intelligence Agency, 254 F.3d 300, 305 n.4 (D.C. Cir. 2001). FOIA provides that "[a]n agency shall process as soon as practicable any request for records to which the agency has granted expedition." 5 U.S.C. § 552(a)(6)(E)(iii).

DOJ implemented EFOIA by final rule effective July 1, 1998. See Revision of Freedom of Information Act and Privacy Act Regulations and Implementation of Electronic Freedom of Information Act Amendments of 1996, 63 Fed. Reg. 29591 (1998), codified at 28 C.F.R. Part 16. This rule, which governs FOIA requests to all DOJ components, see 28 C.F.R. § 16.1(b), states that "[r]equests and appeals" will be "taken out of order and given expedited treatment whenever it is determined that they involve":

---

[2]  Both Congress and the Court of Appeals have recognized that the expedition categories are to be "narrowly applied" because, "[g]iven the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requestors who do not qualify for its treatment." Al-Fayed v. Central Intelligence Agency, 254 F.3d 300, 310 (D.C. Cir. 2001) (quoting H.R. Rep. No. 104-795, reprinted at 1996 U.S.C.A.A.N. 3448, 3469 (Sept. 17, 1996)).

(i)     Circumstances in which the lack of expedited treatment
        could reasonably be expected to pose an imminent threat to
        the life or physical safety of an individual;

(ii)    An urgency to inform the public about an actual or alleged
        federal government activity, if made by a person primarily
        engaged in disseminating information;

(iii)   The loss of substantial due process rights; or

(iv)    A matter of widespread and exceptional media interest in
        which there exist possible questions about the
        government's integrity which affect public confidence.

28 C.F.R. § 16.5(d)(1)(i)-(iv).[3]

Within ten calendar days of receiving a request for expedited processing, the component

must "decide whether to grant it and . . . notify the requestor of the decision." 28 C.F.R.

§ 16.5(d)(4); see also 5 U.S.C. § 552(a)(6)(E)(ii)(I) (requiring notice of decision within ten days

of request). If the request is granted, "the request shall be given priority and shall be processed

as soon as practicable." 28 C.F.R. § 16.5(d)(4). If the request is denied, "any appeal of that

decision shall be acted on expeditiously." Id.; see also 5 U.S.C. § 552(a)(6)(E)(ii)(II) (requiring

"expeditious consideration of administrative appeals of such determinations of whether to

provide expedited processing").

_____

   [3] Categories (i) and (ii) implement the FOIA's "compelling need" standard; categories
(iii) and (iv) define additional categories for expedition. See 63 Fed. Reg. at 29592. Requests
for expedition based on categories (i), (ii), and (iii) must be submitted to the component that
maintains the records requested. See 28 C.F.R. § 16.5(d)(2). Requests for expedition based on
category (iv) – the Department's "special media-related standard," see 63 Fed. Reg. at 29592 –
must be submitted to the Director of the Department's Office of Public Affairs. See 28 C.F.R. §
16.5(d)(2). This enables "the Department's media specialists [to] deal directly with matters of
exceptional concern to the media." 63 Fed. Reg. at 29592.

Case 1:06-cv-00029-CKK    Document 8    Filed 03/20/2006    Page 5 of 22

**B.     The Intelligence Oversight Board**

The Intelligence Oversight Board ("IOB") was established pursuant to Executive Order

11905, 41 Fed. Reg. 7703 (1976).  Over the next twenty years, the functions and organization

were modified by a series of Executive Orders.[4]  The current Executive Order, 128633, 58 Fed.

Reg. 48441 (Sept. 15, 1993), designates the IOB as a standing committee of the President's

Foreign Advisory Board ("PFIAB") within the Executive Office of the President.  Id. § 2.1

IOB is composed of not more than 4 members of FPFIAB appointed by the Chairman.

Id.  It is charged with reviewing the activities of the intelligence community and informing the

President of any activities that it believes are in violation of the Constitution, laws of the US,

executive orders and Presidential directives.  Id. § 2.2(e).

Pursuant to the Executive Order, Inspector Generals and General Counsels of the

intelligence community components report to the IOB "concerning intelligence activities that

they believe may be unlawful or contrary to Executive Order or Presidential directive."  Id. § 2.4.

Based on an agreement between the IOB and the FBI, this language has been interpreted to

mandate the reporting of any violations of a provision of the Attorney General Guidelines for FBI

Foreign Intelligence Collection and Foreign Counterintelligence Investigations, or other

guidelines or regulations approved by the Attorney General in accordance with Executive Order

12333, 46 Fed. Reg. 59941 (1981), as amended, if such provision was designed in full or in part

to ensure the protection of individual rights of the United States persons.  See Attachment E to

Hardy Decl. (two examples of  the redacted IOB memoranda provided to plaintiff in response to

its FOIA request).  Violations of provisions that are essentially administrative violations need not

---

[4] See, e.g., 46 Fed. Reg. 59955 (1981).

be reported to the IOB.  Id. The FBI is required, however, to maintain records of such

administrative violations so that the Counsel to the IOB may review them upon request.  Id.

### STATEMENT OF THE CASE

On November 14, 2005, plaintiff submitted FOIA request to both the FBI and the

Department of Justice's Office of Inspector General ("OIG") requesting "all documents related to

the matter of possible intelligence misconduct reported or considered for reporting to the

Intelligence Oversight Board" created between September 2001 and the date of the request.  Pl.

Exhibits 3 & 4.  On the same day, plaintiff sent a letter to the Office of Information and Privacy

requesting certain records from September 2001 to the date of the request in the Office of the

Attorney General.  Specifically, it requested "all reports of possible intelligence misconduct

reported from the Intelligence Oversight Board ("IOB") to the Attorney General," and "all

records concerning actions taken by the Attorney General and/or the Department of Justice

("DOJ") in response to such IOB reports."  Pl. Exhibit 5.  In each letter, plaintiff asked that its

request be expedited because it involved a "matter of widespread and exceptional media interest

in which there exists possible questions about the government's integrity which affect the public

confidence."  Pl. Exhibits 3-5.

On November 16, 2005, the OIG sent a letter to plaintiff stating that after a thorough

search, no responsive documents had been located in OIG.  Pl. Exhibit 7.

On December 1, 2005, the OIP acknowledged receipt of plaintiff's requests for documents

in the Office of the Attorney General and stated that the Director of Public Affairs had granted

plaintiff's request for expedited processing under 28 U.S.C. § 16.5(d)(1)(iv).  Pl. Exhibit 8.  It

also stated that it had "already initiated a records search in the Office of the Attorney General.

On March 1, 2006, the OIP sent a letter to plaintiff stating that records searches were conducted in the Office of the Attorney General and in the Departmental Executive Secretariat, which is the official records repository for the Office of the Attorney General, and no records responsive to [plaintiff's] request were located. Pl. Exhibit 9.

On December 23, 2005, the FBI sent a letter to plaintiff stating that its request for expedited processing had been granted and that "your request has been assigned our fast track queue and is being reviewed." Pl. Exhibit 10. On February 24, 2006, the FBI sent a letter to plaintiff enclosing 209 pages of documents responsive to the request. Pl. Exhibit 11. The letter explained that "[t]his release is the first in a series of interim releases that will be made for this request."

On February 24, 2006, this Court issued an order requesting the parties "to file a Joint Status Report setting forth a briefing schedule or otherwise indicating how they would like to proceed." Pursuant to that order, counsel for plaintiff and defendant conferred about the course of further proceeding in this action. See Joint Status Report (Dkt. No. 6). As part of that discussion, counsel for defendant informed plaintiff's counsel that the FBI had identified approximately 5500 pages of responsive material and would process 1250 pages every 28 days. Id. Plaintiff informed defendant that it did not "find this processing schedule appropriate for an 'expedited' request" and that it intended to file this motion. Id.

On March 17, 2006, the FBI completed its processing of another 238 pages and sent plaintiff a letter enclosing 233 pages of responsive materials. Hardy Decl. ¶ 24.

# ARGUMENT

## I.    PLAINTIFF IS NOT ENTITLED TO AN ORDER REQUIRING FBI TO COMPLETE PROCESSING OF THE REQUEST WITHIN 20 DAYS.

### A.    The Expedited Processing Provision Only Requires An Agency To Give the Request Priority and Process It As Soon As Practicable.

Plaintiff's allegation that the FBI has violated FOIA is predicated on the assumption that the expedited process provision of FOIA requires an agency to complete its processing within a specific period of time. Pl. Motion at 6. The statute, however, does not require agencies to process requests within a specific time limit. Instead, the statute directs agencies to "process as soon as practicable any request for records to which [they have] granted expedited processing." Id. 5 U.S.C. § 552(a)(6)(E)(III) (emphasis added); see also 28 C.F.R. § 16.5(d)(4) ("If a request for expedited treatment is granted, the request shall be given priority and shall be processed as soon as practicable") (emphasis added). As the Senate Report accompanying the FOIA amendments which inserted the expedited processing procedures explains, the intent of the expedited processing provision was to give certain requests priority, not to require that such requests be processed within a specific period of time:

> [Once] the request for expedited processing is granted, the agency must then proceed to process the request "as soon as practicable." No specific number of days for compliance is imposed by the bill since depending on the complexity of the request, the time needed for compliance may vary. The goal is not to get the request processed within a specific time period, but to give the request priority in processing more quickly than would otherwise occur.

S. Rep. 104-272, 1996 WL 262861, *17 (May 15, 1996) (emphasis added); see also H. R. Rep. No. 104-795, reprinted at 1996 U.S.C.A.A.N. 3448, 3461 (Sept. 17, 1996) ("certain categories of requesters would receive priority treatment of their requests . . . ."). Thus, the expedited

processing provision of FOIA is an ordering mechanism, allowing certain FOIA requestors to jump to the head of the line and avoid the ordinary "first in, first out" processing queue. Once a request is at the front of the line, however, "practicability" is the standard that governs how quickly any particular request can be processed.

Consistent with the plain language of the statute, and Congress's clearly stated intent, this Court has repeatedly recognized that when expedited processing of a FOIA request is granted, the appropriate standard to be applied to determine when documents might be identified for release is "as soon as practicable." See Edmonds v. Fed. Bureau of Investigation, 2002 WL 32539613, *4 (D.D.C. 2002) (Huvelle, J.) (Def. Exhibit 2) (directing defendants to advise the Court "of the date when the request will be processed consistent with 5 U.S.C. § 552(a)(6)(E)(iii) and 28 C.F.R. § 16.5(d)(4) ('as soon as practicable')")[5]; see also Leadership Conf. on Civil Rights v. Gonzales, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (Lamberth, J.) (ordering DOJ to "expedite processing plaintiff's FOIA requests and produce the requested documents to plaintiff as soon as practicable, but no later than . . . two years from the date on which the complaint was initially filed").

Unable to find any specific time period in the plain language of the expedited processing provision itself, plaintiff tries to extrapolate a time limit by citing 5 U.S.C. § 552(a)(6)(A)(i), which it characterizes as "statute's mandated time frame of twenty days for responding to a standard, non-expedited request." Pl. Motion, at 6. Plaintiff bases this argument on a recent decision by Judge Kennedy. EPIC v. Dep't of Justice, Civil Action No. 06-0096 (D.D.C., Feb.

---

[5] Pursuant to that order, FBI advised the court that, based on the facts in that case, it expected to complete its processing by January 31, 2003. Edmonds v. FBI, 417 F.3d 1319, 1321 (D.C. Cir. 1319). The court subsequently extended the deadline to February 10, 2003. Id.

16, 2006) (Pl. Exhibit 12).[6]  In his opinion, Judge Kennedy concluded that interpreting "as soon as practicable" to allow an agency more than 20 days to complete its processing of an expedited request would be inconsistent with the legislative intent to process expedited requests "more quickly than otherwise would occur." Id. at * 18 (quoting S. Rep. No. 104-272, at 17 (1996)).[7]

This conclusion is flawed in at two ways.  First, it based on the assumption that the 20 day time period set forth in § 552(a)(6)(A)(i) as a rigid deadline for the standard FOIA request. The provision does not purport to establish an "outside" time limit on what is "practicable" in responding to an expedited request.  Indeed, courts have routinely allowed agencies to process FOIA requests under the "first in, first out" rule.  See Judicial Watch v. Rossotti, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (Collyer, J.) ("Certainly, it took longer than twenty days to respond to Judicial Watch's FOIA requests, but that is explained by the nature of these requests, the many offices to which they were directed, the number of FOIA requests [the agencies] regularly receive, and the treatment of FOIA requests on a first in/first out basis."); see also id. ("there are often instances where an agency will not be able to meet [the twenty-day] deadline").  Thus, under FOIA, a court may grant an extension to allow the agency to finish its search and processing where the agency has been unable to meet the deadline because of exceptional

---

[6] The Department of Justice has filed a motion seeking relief from that order, and the order has been stayed pending resolution of that motion.  See Order dated March 7, 2006 (Def. Exhibit 3)

[7] In his opinion, Judge Kennedy did not hold that all expedited requests must be completed within 20 days.  Instead, he found that the "presumption of delay raised by failing to respond to an expedited request within twenty days is certainly rebuttable if the agency presents credible evidence that disclosure within such time period is truly not practicable." Id. at * 20. While defendant disagrees with the holding that the failure to respond within 20 days creates a presumption of delay, the FBI has presented credible evidence that disclosure within 20 days is not practicable in this case.  See infra at 12-18.

circumstances. See 5 U.S.C. § 552(a)(6)(c); see also Open America v. Watergate Special Prosecution Force, 547 F. 2d 605, 615 (D.C. Cir. 1976).[8]  Such circumstances make the 20-day deadline "not mandatory but directory." Id. at 616.

Second, it ignores the fact that granting expedited treatment gives the request priority over previously filed requests.  By going to the head of the line, an expedited FOIA request is thus processed more quickly than it would have been had it waited in the "first in, first out" queue.  Indeed, as previously explained, the Senate Report cited by Judge Kennedy stressed that "the goal is not to get the request processed within a specific time period, but to give the request priority in processing more quickly than would otherwise occur."  S. Rep. 104-272, 1996 WL 262861, * 17 (1996).

Therefore, contrary to plaintiff's suggestion, what is practicable cannot be equated with 20 days.[9]  Instead, what is practicable will vary depending on the size, scope, detail, number of

---

[8] As the Court of Appeals explained in Ogelsby v. United States Dept. of Army, 920 F.2d 57 (D.C. Cir. 1990), "[f]requently if the agency is working diligently, but exceptional circumstances have prevented it from responding on time, the court will refrain from ruling on the request itself and allow the agency to complete its determination." Id. at 64.

[9] Indeed, Judge Robertson rejected precisely this very same argument when it was raised by plaintiff in another case in connection with a motion for a temporary restraining order. Electronic Privacy Information Center v. U.S. Dept. of Justice, Civil Action No. 00-1849 (D.D.C.).  In that case, as here, the FBI granted plaintiff's FOIA request expedited treatment but had not yet completed its processing of the request.  As here, plaintiff argued that the expedited processing provision "should be read in relation to the 20 working days" requirement.  Transcript of TRO Hearing on August 2, 2000, at 3 (Def. Exhibit 4).  Rejecting this claim, Judge Robertson stated that the timing of expedited requests depends on what is practicable:

> I think the question being presented here is a purely practical
> question about what is practicable and what is not practicable for
> the [agency].  Now, I don't think it means immediate, and I don't
> think it means as soon as possible.  And I don't know what it
> actually means in the context of this case until the [agency] has a

offices with responsive documents, other agencies or components which must be consulted or to which documents might have to be referred for additional review, and the exemption issues. Id.

**B.     FBI Has Granted Plaintiff's Request Priority and is Completing the Processing of the Request "As Soon As Practicable."**

Plaintiff's bald assertion that the FBI is not processing plaintiff's request "as soon as practicable" has no factual basis. As explained in its letter dated December 23, 2005, plaintiff's request was "assigned to [FBI's] fast track processing queue and is being reviewed." Pl. Exhibit 10. By granting plaintiff's request this expedited treatment, it was granted priority over twenty-four other large track requests, all of which were filed prior to plaintiff's request. Hardy Decl., ¶ 27. These prior requests were in the backlog an average of 211 days. Id. As a result, plaintiff's request did not have to wait in line. Id. Instead, it moved ahead of these prior requests. Id.

The only requests which this request did not bump were prior expedited requests, which in this case included a prior request filed by the plaintiff on March 28, 2005, for documents related to FBI use of certain PATRIOT Act provisions. Hardy Decl. ¶ 34. With respect to that request, the court ordered the FBI to process 1500 pages every 14 days. Electronic Privacy Information Center v. Dept. of Justice, Civ. No. 05-845 (D.D.C., Nov. 16, 2005) (Pl. Exhibit 13). The deadline imposed in that case required a substantial commitment by various Record/Information Dissemination Section ("RIDS") personnel until it completed its processing

_____

reasonable chance to evaluate what is before it in terms of the request.

Id. at 7. Accord American Civil Liberties Union v. Dept. of Defense, 339 F. Supp. 2d 501, 503 (S.D.N.Y. 2004) ("While it would appear that expedited processing would necessarily require compliance in fewer than 20 days," other courts have found that Congress provided that the executive was to 'process as soon as practicable' any expedited request.").

-12-

of that request on January 17, 2006.

In view of the substantial resources required for these prior expedited FOIA requests, the FBI has made significant progress in responding to this FOIA request. The FBI has completed its search for documents and identified over 5500 pages of responsive material. Hardy Decl. ¶ 25. In addition, the FBI has already completed its processing of 476 pages of documents and provided plaintiff with 442 pages containing non-exempt material. Id. ¶ 27. The FBI has also informed plaintiff's counsel that FBI plans to make additional interim responses, processing 1250 pages every twenty-eight days. Joint Status Report, at 2.[10] Under this timetable, the FBI expects to complete its processing within 120 days.

The timetable proposed by the FBI is reasonable in view of the volume and nature of the information sought. Because the documents sought by plaintiff relates to intelligence investigations, much of the material is classified. Hardy Decl., ¶ 26. The existence of classified material contributes significantly to the complexities attendant to processing a FOIA request. Classified documents responsive to plaintiff's request must be evaluated for release under 5 U.S.C. § 552(b)(1), and Executive Order 12958, as amended, 68 Fed. Reg. 15315 (March 25, 2003); see also 28 C.F.R. § 16.4(e), § 16.7.[11] In adopting the expedited processing provision,

---

[10] In its motion, plaintiff refuses even to acknowledge this timetable by asserting that "[t]he FBI's only statement concerning the anticipated timing of its response to plaintiff's FOIA request suggests the likelihood of open-ended delay." Pl. Motion at 7.

[11] Executive Order 13292, 68 Fed. Reg. 15315, sets forth the amended text of Executive Order 12958, which establishes a uniform system for classifying, safeguarding, and declassifying national security information, and specifically provides that "[w]hen an agency receives any request for documents in its custody that contain information that was originally classified by another agency . . . it shall refer copies of any request and the pertinent documents to the originating agency for processing, and may, after consultation with the originating agency, inform any requester of the referral unless such association is itself classified under this order or

Congress specifically recognized agencies may need additional time to review documents to prevent the disclosure of classified information.

> In underscoring the requirement that agencies respond to requests in a timely manner, the Committee does not intend to weaken any interests protected by the FOIA exemptions. Agencies processing some requests may need additional time to adequately review requested material to protect those exemption interests. For example, processing some requests may require additional time in order to properly screen material against the inadvertent disclosure of material covered by the national security exemption.

H.R. Rep. No. 795, 104 Cong., 2d Sess. 23, reprinted at 1996 U.S. Code and Adm. News at 3466. See also Wilderness Soc'y v. U.S. Department of Interior, 2005 WL 3276526, at *6 (Kollar-Kotelly) ("circumstances such as . . . the amount of classified material [and] the resources devoted to the declassification of classified material of public interest . . . are relevant to a court's determination as to whether exceptional circumstances exists" to provide an agency additional time to respond to a FOIA request.)

Moreover, as illustrated by the documents already released, the documents at issue are also subject to a number of other exemptions, including 5 U.S.C. § 552(b)(2) (internal personnel rules and practices); (b)(6) (privacy), (b)(7)(A) (records complied for law enforcement purposes), (b)(7)(C) (personal information in law enforcement records), (b)(7)(D) (confidential sources);

---

its predecessors." Id. § 3.6(b). Department regulations similarly provide that "[w]henever a request is made for a record containing information that has been classified, or may be appropriate for classification, by another component or agency under Executive Order 12958 or any other executive order concerning the classification of records, the receiving component shall refer the responsibility for responding to the request regarding that information to the component or agency that classified the information, should consider the information for classification, or has the primary interest in it, as appropriate." 28 C.F.R. § 16.4(e). Those regulations further provide that "[i]n processing a request for information that is classified under Executive Order 12958 . . . or any other executive order, the originating component shall review the information to determine whether it should remain classified." 28 C.F.R § 16.7.

(b)(7)(E) (disclosure of techniques and procedures for law enforcement investigations). See Attachment E to Hardy Decl. (copies of two redacted IOB memoranda released to plaintiff). Therefore, FBI must conduct a thorough line-by-line of review the documents to identify information protected by these exemptions and, where necessary, redact the protected information. This process requires a considerable length of time in view of the volume and nature of the documents. Hardy Decl. ¶¶ 26-27. For example, because the documents relate to investigations, the names of targets, both actual and potential, identified in the documents require the FBI processor to determine if there is an "open investigation" of the individual. Id. This search requires 20 to 30 minutes per name and has tremendously slowed the processing. Id. ¶ 28.[12]

In its motion, plaintiff attempts to gloss over these difficulties by citing to processing deadlines imposed by courts in other cases. Pl. Motion at 9. The "short" deadlines cited by plaintiff are, however, deceptive because they ignore the time that had elapsed since the FOIA requests had been submitted to the respective agency as well as subsequent extensions of time granted by the courts in those cases. With the exception of the recent case decided by Judge Kennedy, in all of the cases cited by plaintiff, the delays were longer and the agency had far more

---

[12] In most cases, the material protected by exemption (b)(7) is also classified and thus protected by exemption (b)(1). Therefore, if the court upholds the redactions based on exemption (b)(1), it would not be necessary for the parties or the court to reach the issue of whether the information is also protected by another privilege. Accordingly, the time required for FBI to process the request would be reduce if this Court were to allow it in such cases to only assert the (b)(1) exemption without waiving any allegation that the material is also exempt from release, in whole or in part, under other exemptions. This procedure would be reasonable because the D.C. Circuit has "consistently reiterated the principle of deference to the executive in the FOIA context when national security concerns are implicated," Ctr Nat'l Sec. Studies v. U.S. DOJ, 331 F.3d 918, 927 (D.C. Cir. 2003).

time to complete processing the FOIA requests at issue than plaintiff demands in this case.[13]  For example, in <u>Aguilera v. FBI</u>, 941 F. Supp. 144, 148  (D.D.C. 1996), plaintiff filed his FOIA request in May 1994.  Although there were only 275 documents responsive to the request, the FBI stated that it did not expect to complete its processing of the request for another 87 months.  Based on that record, the court  ordered the FBI to respond to request by March 1, 1996, almost two years after the FOIA request had been submitted.

In <u>Judicial Watch v. Dept. of Energy</u>, 191 F. Supp. 2d 138 (D.D.C. 2002), the FOIA requests were served on April 19, 2001, and almost eleven months later three agencies – the Department of Energy, the Department of Transportation and the Department of Commerce – had "produced nothing."  <u>Id.</u> at 240.  The order required the Department of Energy to "a package of non-exempt records, and part of records, responsive to plaintiff's FOIA request," by March 25, 2002, and "a final package of all non-exempt records" by April 10, 2002.  <u>Id.</u> at 141.  The court ordered the Department of Transportation and the Department of Commerce to provide plaintiff with a complete package of non-exempt records by May 3, 2002.  Thus, in that case, the deadlines imposed by the court in that case were approximately one year after the request had been filed.

Similarly, in <u>American Civil Liberties Union v. Dept. of Defense</u>, 339 F. Supp. 2d 501 (S.D.N.Y. 2004), plaintiff had filed its initial FOIA request on October 7, 2003, and the agency had failed to produce any documents eleven month later.  <u>Id.</u> at 502.  Under those circumstances,

---

[13]  The record in this case is considerably different that the record before Judge Kennedy when he issued his initial order in <u>EPIC v. Dept. of Justice</u>, Civil No. 06-0096 (D.D.C.).  Unlike here, the agency in that case had not yet produced any responsive documents.  Pl. Exhibit 12, at * 2.

the court initially ordered defendants to produce or identify responsive records by October 15, 2004, over a year after the request had been submitted. A review of the docket in that case, however, reveals that this deadline was in fact not practicable and multiple enlargements have been granted to the responding agencies. In fact, processing of responsive documents remains ongoing to this date, more than 18 months following the entry of the court's initial order. See Docket Sheet (Def. Exhibit 5). See also Cleaver v. Kelly, 427 F. Supp. 80 (D.D.C. 1976) (FOIA request filed February 27, 1976, and defendant ordered to respond by January 12, 1977); Natural Resources Defense Council v. Dept. of Energy, 191 F. Supp. 2d 41 (D.D.C. 2002) (FOIA request made April 26, 2001, and defendants ordered to provide responsive non-exempt documents to be produced between March 25, 2002, and April 10, 2002); Electronic Privacy Info. Center v. Dept. of Justice, Civ. No. 05-845 (D.D.C., Nov. 16, 2005) (Pl. Exhibit. 13) (FOIA request made March 29, 2005, and defendant ordered agency to process 1500 pages of documents every fifteen days on a rolling basis "until processing is complete" and to notify plaintiff of the total number of responsive pages by January 2006).

These cases are, therefore, wholly unlike this case, where only four months have passed since plaintiff submitted its FOIA request, and the FBI has already started to provide interim responses and given plaintiff a timetable for completion of its response.

In short, plaintiff's assertion that the FBI is not processing the request "as soon as practicable" has no factual basis. In view of the number of documents involved and the issues raised by their classified nature and other exemptions, plaintiff's demand that FBI complete its processing of plaintiff's request within 20 days is unreasonable and should be denied.

II.    **PLAINTIFF'S DEMAND FOR AN ORDER REQUIRING FBI TO PRODUCE A**
       ***VAUGHN* INDEX IN 30 DAYS IS PREMATURE AND UNREASONABLE.**

  Plaintiff's request for an order compelling FBI to produce a *Vaughn* index of redacted

information within 30 days (or 10 days after plaintiff seeks to compel FBI to complete its

processing of the documents) should also be denied because it is premature and imposes an

unreasonable deadline on the FBI.

  First, plaintiff's demand that FBI provide a *Vaughn* index at this stage is premature. The

purpose of such an index allows the trial court "to make a rational decision [about] whether the

withheld material must be produced without actually viewing the documents themselves . . .

[and] to produce a record that will render [its] decision capable of meaningful review on appeal."

King v. United States Dep't of Justice, 830 F.2d 210, 219 (D.C. Cir. 1987). Given its purpose,

courts generally held that do not require an agency to produce such an index before the filing of

dispositive motion. See, e.g.,Miscavige v. IRS, 2 F.3d 366, 369 (11th Cir. 1983) (plaintiff's

"early attempt in litigation of this kind to obtain a *Vaughn* index . . . is inappropriate until the

government has first has a chance to provide the court with information necessary to make a

decision on the applicable exemption."); United States Comm. on Refugees v. Department of

State, 1992 WL 35089 at *1 (D.D.C. Feb. 7, 1992)(concluding that "the preparation of a *Vaughn*

index is unwarranted before the filing of dispositive motions in FOIA action"); Stimac v. United

States Department of Justice, 620 F. Supp. 212, 213 (D.D.C. 1985) ("The preparation of a

*Vaughn* index would be premature before filing of dispositive motions."); Pyne v. Commissioner,

1999 WL 112532 at *3 (D. Hawaii., Jan. 6, 1999) (same); Payne v. United States Dep't of

Justice, 1995 WL 60112 at *1 (E.D. La., Oct. 11, 1995) (same). Indeed, the standard practice in

-18-

FOIA litigation is to file a dispositive motion along with any supporting material such an a *Vaughn* index. Plaintiff has presented no arguments why that procedure should not be followed here.

Second, even if it were not premature to set a deadline for filing a *Vaughn* index, a 30-day deadline for providing a *Vaughn* index in this case is not reasonable. In this case, almost of all of the 5500 pages contain information that is protected by one or more of the exemptions. See Attachment to Hardy Decl. (samples of the redacted documents provided to plaintiff in response to its FOIA request). Aside from classified information protected by exemption (b)(1), the documents also contain information protected by (b)(2), (b)(6) and various subparts of (b)(7). Preparing an *Vaughn* index relating the each of various portions of documents withheld to each of the various investigative privilege is extremely time consuming and burdensome, and is certainly not something that can be done by the FBI within 10 days of its completion of the processing. As explained in the attached declaration, FBI estimates that it will need at least 120 days to prepare a *Vaughn* index of each of the pages withheld in whole or in part. Hardy Decl., ¶ 30. [14]

To the extent plaintiff seeks to expedite the production of a *Vaughn* index, the FBI should be allowed to submit a *Vaughn* index of a representative sample of the documents withheld in whole or in part. Courts have held that representative sampling is "appropriate when a large number of documents are involved.'" Bonner v. United States Dep't of State, 928 F.2d 1148, 1151 (D.C. Cir. 1991). Accord Neely v. FBI, 208 F.3d 461, 467 (4th Cir. 2000) (suggesting that,

---

[14] Because FBI has not completed processing of the records, this estimate may change once the FBI has completed its processing.

on remand, the district court "resort to the well-established practice in FOIA litigation of randomly sampling the documents" in view of the volume of documents at issue.); Jones v. FBI, 41 F.3d 238, 242 (6th Cir. 1994) (approving sample comprising two percent of the total number of pages); Meeropol v. Meese, 790 F.2d 942, 956-57 (D.C. Cir. 1986) (allowing sample of every 100th document when approximately 20,000 documents were at issue); Weisenberg v. United States Dep't of Justice, 745 F.2d 1576, 1490 (D.C. Cir. 1984) (approving use of random sample constituting two percent of the material withheld); Piper v. United States Dep't of Justice, 294 F. Supp.2d 16, 20 (D.D.C. 2003) (noting that parties agreed to sample 357 pages of 80,000 at issue).

As this Circuit explained in Bonner, 928 F.2d at 1149, limiting the *Vaughn* to a sample of the documents in dispute "allows the court and the parties to reduce a voluminous FOIA exemption case into a manageable number of items" for the *Vaughn* index. Furthermore, "[i]f the sample is well-chosen, a court can, with some confidence, 'extrapolate its conclusions from the representative sample to the larger group of withheld materials." Id. at 1151 (quoting Fensterwald v. CIA, 443 F. Supp. 667, 669 (D.D.C. 1977)).

In this case, the FBI has identified approximately 5500 pages of responsive materials, many of which are redacted in whole or part. Hardy Decl., ¶ 27. Courts have found that sampling is appropriate in cases involving a comparable or even smaller number of pages. For example, in Davin v. United States Department of Justice, 60 F.3d 1043, 1047-1048 (3d Cir. 1995), the district court approved a stipulation allowing the government to select 500 pages of the 6668 pages at issue. In Blanton v. U.S. Dept. of Justice, 63 F. Supp. 2d 35, 40, 43 (D.D.C. 1999), the FBI submitted a *Vaughn* index covering a representative sampling of approximately

2000 pages of documents withheld. Indeed, in <u>Neely v. FBI</u>, 208 F.3d at 467, the Court of Appeals for the Fourth Circuit suggested that on remand the district court employ a random sampling of the documents even though it involved only 1386 pages of responsive material.

Moreover, allowing the FBI to prepare a *Vaughn* index based on a representative sample is especially appropriate in this case because the documents at issue are essentially similar in format. See <u>Campaign for Responsible Transplantation v. FDA</u>, 180 F. Supp. 2d 29, 34 (D.D.C. 2001) (district court approved a representative sampling on one of the many applications for investigation of new drugs because the applications were "essentially uniform"). In this case, for each of the referrals to the IOB, there is memorandum by the General Counsel either finding that the action should be referred to the IOU or finding that referral is not appropriate. See Attachments E to Hardy Decl. All of the memoranda are essentially similar in format and contain the same types of exemptions. Thus, the court can "with some confidence 'extrapolate its conclusion from the representative sample to the larger group of withheld documents.' " <u>Bonner</u>, 928 F.2d at 1151. Accordingly, this Court should allow the FBI to submit a *Vaughn* index based on a representative sample of the documents at issue here.

## CONCLUSION

For the above stated reasons, plaintiff's motion to compel the FBI to complete its processing of the FOIA request with 20 days and to provide plaintiff with a *Vaughn* Index in 30 days should be denied.

> Respectfully Submitted,
>
> PETER D. KEISLER
> Assistant Attorney General

KENNETH L WAINSTEIN.
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

s/Marcia K. Sowles
MARCIA K. SOWLES, DC Bar No. 369455
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7108
Washington, D.C.  20530
Tel.: (202) 514- 4960
Fax: (202) 616- 8470
E-mail:  marcia.sowles@usdoj.gov

Attorneys for Defendant