# EXHIBIT 3

LEXSEE 2005 U.S. DIST. LEXIS 18876

ELECTRONIC PRIVACY INFORMATION CENTER, Plaintiff, v. UNITED
STATES DEPARTMENT OF JUSTICE, et al., Defendants.

Civil Action No. 02-0063 (CKK)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

2005 U.S. Dist. LEXIS 18876

August 31, 2005, Decided
August 31, 2005, Filed

**PRIOR HISTORY:** *Elec. Privacy Info. Ctr. v. United States DOJ*, 2004 U.S. Dist. LEXIS 28485 (D.D.C., Aug. 23, 2004)

**COUNSEL:** [*1] For ELECTRONIC PRIVACY INFORMATION CENTER, Plaintiff: Chris Jay Hoofnagle, ELECTRONIC PRIVATE INFORMATION CENTER, San Francisco, CA.

For U.S. DEPARTMENT OF JUSTICE, DEPARTMENT OF THE TREASURY, Defendants: Vesper Mei, U.S. DEPARTMENT OF JUSTICE, Washington, DC.

**JUDGES:** COLLEEN KOLLAR-KOTELLY, United States District Judge.

**OPINIONBY:** COLLEEN KOLLAR-KOTELLY

**OPINION:**

**MEMORANDUM OPINION**

(August 31, 2005)

Plaintiffs initiated this action on January 14, 2002, seeking release of agency records under the Freedom of Information Act ("FOIA"), *5 U.S.C. ß 552*, related to government use of privately owned databases containing personal information. Currently before the Court is Defendants' motion for a stay of proceedings in the above-captioned action until August 31, 2005 pursuant to the doctrine announced in *Open America v. Watergate Special Prosecution Force, 547 F.2d 605, 178 U.S. App. D.C. 308 (D.C. Cir. 1976)*. According to Defendants, although the Federal Bureau of Investigation ("FBI") is exercising due diligence in responding to the Plaintiff's FOIA request, exceptional circumstances have prevented it from completely processing Plaintiff's request -- which covers around 5,000 [*2] pages of documents relating to a classified contract between the Government and ChoicePoint, Inc., a private company that sells personal information -- within the statutory time limit. Plaintiff opposes Defendants' motion. Upon a review of the parties' filings, the attached exhibits, the lengthy affidavit submitted by Mr. Keith R. Gehle, Assistant Section Chief of the FBI's Record/Information Dissemination Section, the relevant case law, and the entire record herein, the Court shall grant Defendants' Motion for an *Open America* Stay.

**I: BACKGROUND**

By a letter dated June 22, 2001, Plaintiff submitted a FOIA request to the FBI, seeking "all records relating to transactions, communications, and contracts concerning businesses that sell individuals' personal information." Compl., Ex. A (6/22/01 FOIA request). By a letter dated July 7, 2001, FBI Headquarters closed Plaintiff's request upon a finding that its parameters were too vague. *See* Defs.' Mot. to Stay, Ex. A (9/23/04 Decl. of Keith Gehle)("Gehle Decl.") at P 22. Following a clarification letter from Plaintiff dated August 8, 2001, FBI Headquarters subsequently acknowledged Plaintiff's request as seeking access to information [*3] concerning only ChoicePoint, Inc., a private company that sells personal information. *Id*. Following Defendants' lack of responsiveness, Plaintiff's filed this action on January 14, 2002.

As a result, what is now the FBI's Record/Information Dissemination Section began its search for documents responsive to Plaintiff's FOIA request on February 15, 2002. *Id*. The search revealed two large categories of potentially responsive documents: (1) documents related to a public contract that the FBI has with ChoicePoint to provide FBI employees access to information about individuals and companies as well as archived news databases; and (2) approximately 5,000 pages of documents related to a classified contract be-

tween the FBI and ChoicePoint. Once these documents were identified, it became apparent that the total volume of potentially responsive records would be quite large. *Id.* P 23. As such, after failed negotiations to narrow the scope of Plaintiff's FOIA request, the FBI proceeded on parallel tracks with regard to the two categories of documents. *Id.* As for the documents related to the public ChoicePoint contract, the FBI sought and obtained a stay of proceedings until January 31, 2003, and [*4] later through April 30, 2003, to complete its review, processing, and release of that material. *Id.*

With respect to the second category of documents, i.e., the classified ChoicePoint contract, Defendants notified Plaintiff of the existence of this material in a letter dated May 28, 2003, and informed Plaintiff that processing of the material would take in excess of eighteen (18) months. *See* 12/30/03 Pub. Decl. of J. Stephen Tidwell (then-Deputy Assistant Director of the FBI's Criminal Investigative Division) P 16. On October 1, 2003, after Plaintiff declined Defendants' invitation to exclude the material from its FOIA request, Defendants informed Plaintiff again that it would take the FBI approximately twenty-four (24) months to process the 5,000 pages. *Id.* P 18. On December 31, 2003, Defendants sought to exclude these 5,000 pages of material from the FOIA request, or alternatively to be granted an eighteen (18) month stay to process (b)(1) exemptions first, or a twenty-four (24) month stay to process the documents under all exceptions. *See* Defs.' Mot. to Exclude Classified Docs. From Pl.'s FOIA Request or, in the Alternative, to Brief FOIA Exemption (B)(1) Issues [*5] First or, in the Alternative, for an Extension of Time.

In a Memorandum Opinion and Order dated August 23, 2004, this Court denied Defendants' motion to exclude the 5,000 pages of documents relating to the classified ChoicePoint contract from processing, but invited Defendants to move for a stay pursuant to the doctrine set forth in *Open America. See Elec. Privacy Info. Ctr. v. United States DOJ*, 2004 U.S. Dist. LEXIS 28485, Civ. No. 02-0063 (CK), at 13 (D.D.C. Aug. 23, 2004) (memorandum opinion denying Defendants' motion to exclude documents) ("Defendant is invited to move for a stay that meets the *Open America* standard."). Taking the Court's invitation, Defendants filed the present Motion for an *Open America* Stay on September 23, 2004, claiming that exceptional circumstances exist to justify the delay in production of the 5,000 pages of documents responsive to Plaintiff's FOIA request.

In Defendants' filing, they note that the classification review of the 5,000 pages is presently ongoing at the FBI's Record/Information Dissemination Section Classification Unit ("CU"). Defs.' Mot. to Stay, Ex. A ("Gehle Decl.") P 24. These documents are being reviewed first for the applicability of Exemption [*6] (b)(1), and are being prepared for review by the Department of Justice's Department Review Committee ("DRC"). *Id.* A total of nine (9) FOIA paralegals in CU are performing the classification review, and -- at the time of Defendants' filing -- 3,535 pages were reviewed already for initial classification. *Id.* P 25. The DRC will then review all classification determinations in the documents at issue and concur or disagree with the CU's classification actions. *Id.* P 24. The CU will then apply the DRC's classification decisions to the documents, make the appropriate changes, and stamp the face of each document to indicate the date that the DRC review occurred. *Id.* After the CU and DRC complete their (b)(1) work on the documents, the collected material will be forwarded to the Disclosure Unit for a page-by-page, line-by-line review of the information to determine if any exemptions in addition to Exemption (b)(1) should be applied. *Id.* Although it was planned that the case was to be assigned to one (1) FOIA paralegal in the Disclosure Unit for processing, additional paralegals were to be made available for the assignment. *Id.* P 25. The FBI avers that it is committed [*7] to completing the review as expeditiously as possible while balancing the competing demands of other pending requests both in the litigation and administrative queues. *Id.*

**II: LEGAL STANDARDS**

Under FOIA, an agency is required to determine within twenty (20) days of the receipt of a request for records "whether to comply with such request[,]" and "to immediately notify the person making such request of such determination and the reasons thereof." *5 U.S.C. ß 552(a)(6)(A)(i)*. However, this time limit can be extended by ten (10) working days if the agency determines that "unusual circumstances" exist. *5 U.S.C. ß 552(a)(6)(B)*.

Nevertheless, FOIA explicitly contemplates the possibility of a stay of judicial proceedings at the district court level. Under *Section 552 (a)(6)(C)(i) of FOIA*, the Government may obtain a stay of proceedings "if the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." *5 U.S.C. ß 552(a)(6)(C)(i)*. Moreover, in *Open America*, the D.C. Circuit addressed *Section 552(a)(6)(C)(i)* and found that an agency is entitled to additional time [*8] under FOIA's "exceptional circumstances" provision when the agency:

> is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the

agency can show that it "is exercising due diligence" in processing the requests.

547 F.2d at 616 (quoting 5 U.S.C. ß 552 (a)(6)(C)). Effective October 2, 1997, as part of the Electronic Freedom of Information Amendments of 1996, Congress added the following two subsections to Section 552(a)(6)(C):

> (ii) For purposes of this subparagraph, the term "exceptional circumstances" does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests.
>
> (iii) Refusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request) under clause (ii) after being given an opportunity to do so by the agency to whom the person [*9] made the request shall be considered as a factor in determining whether exceptional circumstances exist for purposes of this subparagraph.

5 U.S.C. ß 552 (a)(6)(C)(ii), (iii). The legislative history of the 1996 amendments reveals that Congress, having considered the decision in Open America, intended the amendments to be "consistent with the holding in Open America," and sought only to "clarify that routine, predictable agency backlogs for FOIA requests do not constitute exceptional circumstances." H.R. Rep. 104-795 at 24 (1996), reprinted in 1996 U.S.C.C.A.N. 3448, 3467. However, the amendments clearly contemplate that other circumstances, such as an agency's efforts to reduce the number of pending requests, the amount of classified material, the size and complexity of other requests processed by the agency, the resources being devoted to the declassification of classified material of public interest, and the number of requests for records by courts or administrative tribunals, are relevant to the courts' determination as to whether exceptional circumstances exist. Id.; see also EFOIA Report, at *23, H.R. Rep. No. 106-50, 106th Cong., 1st Sess., 1999 WL 132731, [*10] at *13 (Mar. 11, 1999).

Following the decision in Open America, courts in the D.C. Circuit "have interpreted [Section (a)(6)(C) ] as excusing any delays encountered in responding to a request as long as the agencies are making a good faith effort and exercising due diligence in processing the requests on a first-in first-out basis." Kuffel v. U.S. Bureau of Prisons, 882 F. Supp. 1116, 1127 (D.D.C. 1995) (citations omitted); see also Edmond v. United States Atty., 959 F. Supp. 1, 3 (D.D.C. 1997) ("Courts have uniformly granted the government reasonable periods of time in which to review FOIA requests when there is a backlog."); Ferguson v. Fed. Bureau of Investigation, 722 F. Supp. 1137, 1140 (S.D.N.Y. 1989) ("In the D.C. Circuit, courts generally have granted extensions when presented with evidence of an overburdened agency following necessary procedures.") (citations omitted).

Under D.C. Circuit law, a stay pursuant to this subsection and the Open America doctrine may be granted "(1) when an agency is burdened with an unanticipated number of FOIA requests; and (2) when agency resources are inadequate to process the requests [*11] within the time limits set forth in the statute; and (3) when the agency shows that it is exercising due diligence' in processing the requests; and (4) the agency shows reasonable progress' in reducing its backlog of requests." Williams v. FBI, 2000 U.S. Dist. LEXIS 17493, at *4, Civ. A. No. 99-3378 (AK) (D.D.C. Nov. 30, 2000) (emphasis in original); see also Summers v. Dep't of Justice, 288 U.S. App. D.C. 219, 925 F.2d 450, 452 n.2 (D.C. Cir. 1991) (noting first three factors). Agency affidavits provide a critical insight into this process, and are often determinative. See SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1200, 288 U.S. App. D.C. 324 (D.C. Cir. 1991) (citations and internal quotation marks omitted) ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."); Aguilera v. Fed. Bureau of Investigation, 941 F. Supp. 144, 149 (D.D.C. 1996) (citing agency affidavits in addressing stay criteria).

### III: DISCUSSION

Upon a searching examination of parties' filings, the attached exhibits, [*12] Mr. Gehle's Affidavit, and the relevant case law, the Court concludes that Defendants have met the standards necessary to obtain an Open America stay. The Court finds that Defendants have established both that exceptional circumstances exist and that the FBI has been proceeding with its response to Plaintiff's FOIA request with due diligence. Accordingly, the Court shall grant Defendants' motion for a stay of proceedings in this matter until August 31, 2005, pursuant to the doctrine elicited in Open America.

First, the Court concludes that "exceptional circumstances" exist to warrant the imposition of a temporary Open America stay -- i.e., the FBI (1) is currently inundated with an unanticipated amount of lengthy FOIA requests, (2) its current resources are inadequate to re-

Case 1:06-cv-00029-CKK    Document 9-4    Filed 03/30/2006    Page 5 of 6

Page 4
2005 U.S. Dist. LEXIS 18876, *

spond to these requests, including Plaintiff's request, in the time period set forth by the statute, and (3) the agency clearly has made reasonable progress in reducing its once-substantial backlog despite these exceptional circumstances. Importantly, FOIA places an extreme burden on the FBI's information processing resources: the FBI receives an average of 700 FOIA requests each month, and due to [*13] the rise in litigation and appeals over the last twenty years, the FBI's FOIA backlog jumped from its 1985 level of 4,736 requests to a high of 16,244 requests on December 31, 1996. See Defs.' Mot. to Stay, Ex. A ("Gehle Decl.") P 8. Due to this backlog, the agency sought additional funding from Congress, which provided it with over 368 new employees in the 1997 and 1998 budgets. Id. P 14. Due to this influx of staffing and continued good faith responsiveness, the FOIA backlog has fallen from the high of 16,244 on December 31, 1996 to the August 30, 2004 figure of 1,763 requests currently outstanding -- a reduction of roughly 89%. Id. The FBI anticipates that future totals will reflect a continuation of this downward trend. Id. As such, while the FBI currently faces a large backlog of requests, the recent reduction of that unanticipated backlog certainly constitutes "reasonable progress" as required by *Section 552(a)(6)(C)(ii)*.

Moreover, despite this commendable reduction, it is also plain that the FBI's current resources remain inadequate to respond to FOIA requests such as those made by Plaintiff within the time required by statute. First, employees within the FBI's [*14] Record/Information Dissemination Section must now split their time with other, ever-increasing duties. For instance, handling administrative appeals -- of which there were approximately 480 pending resolution on August 30, 2004 -- consumes substantial amounts of FOIA staff time, taking employees away from their regular processing efforts. Id. P 9. The Record/Information Dissemination Section has also assumed significant litigation responsibilities, which further reduce the amount of available processing time. Id. P 10. On August 30, 2004, the FBI was involved in approximately 150 pending lawsuits in various federal courts involving roughly 650 FOIA requests. Id. Second, in response to the tragic events of September 11, 2001, the FBI has diverted manpower to assist with the ongoing "war on terrorism." Id. P 13. In furtherance of the FBI's newfound responsibilities, the agency has shifted and refocused many of its priorities and resources in a manner that has resulted in the shifting, or "detailing," of numerous paralegal assistants from the Record/Information Dissemination Section to operational divisions within FBI Headquarters for indeterminate periods of time to work [*15] in support of the "war on terrorism." Id. This has further exacerbated the resource crunch within the Record/Information Dissemination Section and ensured that its resources are currently inadequate to ensure that response time to FOIA requests falls within the statutory timeframe.

In weighing these factors, the Court concludes that the FBI faces "exceptional circumstances" warranting an *Open America* stay. The Court notes that its finding is consonant with the recent rulings of other courts within this jurisdiction. *See, e.g., Summers v. Cent. Intelligence Agency*, Civ. No. A. 98-1682, at 1-2 (D.D.C. July 26, 1999) (memorandum opinion granting stay because "the FBI has demonstrated through its affidavits that exceptional circumstances do exist, the agency is exercising due diligence in processing requests, and it is making reasonable progress in reducing its backlog"); *Haddon v. Freeh, 31 F. Supp. 2d 16, 19 (D.D.C. 1998)* (noting that court had granted an *Open America* stay until January 1998 on request submitted to the FBI nearly four years before); *Narducci v. Fed. Bureau of Investigation*, Civ. A. No. 98-0130, at 1 (D.D.C. July 17, 1998) (granting [*16] approximately three-year stay because the FBI "is deluged with a volume of requests for information vastly in excess of that anticipated by Congress"); *Guzzino v. FBI, 1997 U.S. Dist. LEXIS 462, Civ. A. No. 95-1780, 1997 WL 22886, at *2 (D.D.C. Jan. 10, 1997)* (granting more than four-year stay because "the FBI has shown that even though it is exercising due diligence, because of inadequate resources it is unable to respond to plaintiff's request within the statutory [] limit").

Second, the Court concludes that the FBI has demonstrated the "due diligence" necessary to substantiate an *Open America* stay. Plaintiff's request, which covers more than 5,000 pages, is certainly a "large request" as defined by the FBI, as it stretches beyond 2,500 pages. See U.S. DEPARTMENT OF JUSTICE FREEDOM OF INFORMATION ACT (FOIA) REPORT FOR FISCAL YEAR 2003, Compliance With Time Limits/Status of Pending requests, *available at* http://www.usdoj.gov/oip/annual_report/2003/03contents.htm. It is not surprising that large requests such as the present one take additional amounts of time. *See, e.g., Jimenez v. Fed. Bureau of Investigation, 938 F. Supp. 21, 24, 31-32 (D.D.C. 1996)* [*17] (issuing *Open America* stay until March 2000, five years after request filed, so FBI could process 700 pages); *Ohaegbu v. Fed. Bureau of Investigation, 936 F. Supp. 7, 8 (D.D.C. 1996)* (granting stay until July 1997, over three years after request filed, to permit FBI to process 175 pages); *Cecola v. FBI, 1995 U.S. Dist. LEXIS 13253, Civ. No. 94-4866, 1995 WL 549066, at *1-*2 (N.D.Ill. Sept. 8, 1995)* (dismissing case without prejudice to permit FBI until November 1999 to complete processing of over 1,500 pages responsive to a request filed over six years before). Moreover, it is clear that the FBI has been exercising "due diligence" vis-a-vis FOIA requests in general. The substantial reduction in the FBI's backlog is attributable to an increase

Case 1:06-cv-00029-CKK   Document 9-4   Filed 03/30/2006   Page 6 of 6

Page 5
2005 U.S. Dist. LEXIS 18876, *

in manpower, the introduction of certain on-line and computerized processing techniques to reduce delays, and the adoption of a new three-queue first-in, first-out system. *See* Defs.' Mot. to Stay, Ex. A ("Gehle Decl.") PP 15-16. This new three-tiered system, which replaced the two-track, first-in, first-out system that the D.C. Circuit previously recognized as supporting a "due diligence" argument, *see* [*18] *Open America, 547 F.2d at 616*, has greatly increased the overall efficiency of the FBI's response system. *See* Defs.' Mot. to Stay, Ex. A ("Gehle Decl.") P 19.

The FBI's general "due diligence" extends to the processing of Plaintiff's request. As noted previously, the 5,000 pages of documents associated with the classified contract must go through a review by the CU to determine the applicability of Exemption (b)(1), then must be reviewed by the DRC. *Id.* P 24. As of September 23, 2004, nine FOIA paralegals were working on Plaintiff's request, and reviewed over 3,500 pages at that early time. *Id.* P 25. After DRC review, the CU will apply the DRC's classification decisions and complete the (b)(1) work on the documents. *Id.* P 24. After this, the Disclosure Unit will be required to conduct page-by-page, line-by-line review of the information to determine if any exemptions other than Exemption (b)(1) might apply. *Id.* Given this system, the real improvements made, and the FBI's stated progress, the Court finds that the efforts made by the FBI constitute the "due diligence" necessary for the imposition of an *Open America* stay. As such, the Court is "satisfied [*19] that [the FBI] is doing the best it can do within its physical limitations to process all requests in a timely manner." *Freeman v. U.S. Dep't of Justice, 822 F. Supp. 1064, 1066 (S.D.N.Y. 1993)*; *see also Ohaegbu, 936 F. Supp. at 8* ("In view of this two-track system and the large volume of documents expected to be responsive to plaintiff's request, this Court finds that the FBI has met the due diligence requirement for a stay.").

### IV: CONCLUSION

For the reasons set forth above, the Court shall grant Defendants' Motion for an *Open America* Stay until August 31, 2005, as requested. An Order accompanies this Memorandum Opinion.

Date: August 31, 2005

COLLEEN KOLLAR-KOTELLY

United States District Judge

### ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it is, this 31st day of August, 2005, hereby

**ORDERED** that [39] Defendants' Motion for an *Open America* Stay until August 31, 2005, is GRANTED.

**SO ORDERED.**

COLLEEN KOLLAR-KOTELLY

United States District Judge